UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DOUGLAS MASTERS, Individually and on Behalf of All Other Similarly Situated, , <br> Plaintiff <br> v. <br><br> TIME WARNER CABLE INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) CIVIL ACTION NO. <br> 1:12-cv-000451-SS |

**DEFENDANT TIME WARNER CABLE INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY AND COMPEL ARBITRATION**

## I.    INTRODUCTION

Plaintiff is a customer of Time Warner Cable Inc. ("TWC"). Plaintiff brought this suit seeking to certify national and statewide classes for the purposes of pursuing claims under the federal Telephone Consumer Protection Act and § 392.302(f) of the Texas Financial Code, respectively. As a basis for his Complaint, Plaintiff alleges that TWC made a handful of calls to his cell phone in a mistaken attempt to collect a debt owed by another TWC customer.

When Plaintiff became a TWC customer, he expressly agreed to arbitrate any dispute that arose between him and TWC. The parties' arbitration agreement also clearly provides that the arbitrator (not a court) must resolve any issues regarding the scope of the arbitration agreement. Accordingly, Plaintiff's attempt to bring his dispute against TWC in federal court is improper, and TWC requests that this Court dismiss or stay this lawsuit and compel Plaintiff to submit this dispute to arbitration as agreed to by the parties.

## II.     RELEVANT FACTS

### A.  Plaintiff's Relationship with TWC

Plaintiff has been a TWC customer since 2009.  (Declaration of Ed Tagg ¶ 3 (attached hereto as Exhibit 1).)  Specifically, Time Warner Cable provides high-speed internet services to Plaintiff.  (Tagg Decl. ¶ 4.)  At the time these services were installed, Plaintiff signed a work order (the "Work Order") in which he expressly accepted and agreed to be bound by the terms of TWC's Residential Services Subscriber Agreement (the "Subscriber Agreement").[1]  The Work Order also expressly incorporates by reference the terms of the Subscriber Agreement.

The Subscriber Agreement contains a broad arbitration clause that covers <u>any</u> dispute between Plaintiff and TWC (the "Arbitration Clause"), including the alleged dispute which gives rise to this litigation.  (Subscriber Agreement ¶ 15.)  The first page of the Subscriber Agreement expressly discloses the existence of the Arbitration Clause in bold, capital, red letters that are set off from the surrounding text by a prominent box.  (Subscriber Agreement p. 1.)  The Work Order similarly discloses in prominent text adjacent to the signature line that Plaintiff was agreeing to arbitration and waiving any right to a jury trial for any disputes with TWC.  (Work Order p. 1.)

The Arbitration Clause is set forth in Paragraph 15 of the Subscriber Agreement.  The Clause states that both Masters and TWC agree that, if they cannot resolve a "Dispute" informally, the parties will:

> submit the Dispute to the American Arbitration Association for resolution under its Commercial Arbitration Rules or, by separate mutual agreement, to another arbitration institution.  As an alternative, you may bring your claim in your local "small claims" court, if its rules permit it.

---

[1]  True and correct copies of the Work Order and Subscriber Agreement are attached as Exhibits A and B, respectively, to the Tagg Declaration.

(Subscriber Agreement, ¶ 15(a).)  A "Dispute" is defined very broadly to include:

> **[A]ny dispute, claim, or controversy between you and [TWC] regarding any aspect of your relationship with us, including those based on events that occurred prior to the date of this Agreement.**

(Subscriber Agreement ¶ 16(e) (emphasis added).) [2]

Nor is this an arbitration requirement foisted upon all TWC customers.  The Arbitration Clause very clearly states that any customer that does not want to waive his ability to bring claims within the court system may opt out of the Arbitration Clause.  (Subscriber Agreement ¶ 15(e).)[3]

The Arbitration Clause also clearly and unmistakably states that "**The arbitrator will decide whether a dispute can be arbitrated**." (Subscriber Agreement ¶ 15(b) (emphasis added).)  Therefore, whether Plaintiff's claims in this litigation fall within the broad scope of the Arbitration Clause is for an arbitrator to decide.

---

[2]  As discussed in more detail *infra*, the outcome of this dispute necessarily involves a construction of the scope of Plaintiff's consent to receive calls from TWC "for any purpose," as set forth in the Subscriber Agreement, which is an "aspect" of Plaintiff's "relationship with [TWC]."  (Subscriber Agreement ¶ 12(a) & (c) (emphasis added).)  See 47 U.S.C. § 227(b)(1)(A)(iii) (providing that TCPA applies only where calls are made without "prior express consent" of the consumer).  Therefore, this dispute clearly falls within the scope of the Arbitration Clause agreed to by the parties.

[3] The arbitration disclosure on the first page of the Subscriber Agreement also expressly indicates that Plaintiff could "opt out" of the arbitration requirement pursuant to Section 15 of the Subscriber Agreement.  This provision clearly states that Plaintiff was not required to accept the Arbitration Clause and could have opted out of the arbitration requirement by notifying TWC in writing within 30 days of subscribing to TWC's services.  (Subscriber Agreement ¶ 15(e).)  Plaintiff did not opt-out of the Arbitration Clause.  (Tagg Decl. ¶ 6.)

### B. The Alleged Basis for Plaintiff's Claims[4]

In this lawsuit, Plaintiff seeks to certify national and statewide classes to pursue claims under the Telephone Consumer Protection Act and § 392.302(f) of the Texas Financial Code, respectively, because he received six auto-dialed telephone calls on his cell phone from Time Warner Cable between October 2011 and January 2012, attempting to collect a debt for past-due payments for cable services.  (Compl., DE 1 ¶¶ 9-18.)  As it turned out, Plaintiff alleges that he was being called by mistake, and the calls were actually regarding the account of another Time Warner Cable customer.  (Compl. ¶¶ 9-16.)   After Plaintiff allegedly informed TWC on January 16, 2012 that the alleged calls involved another TWC customer, Plaintiff does not allege that he received any further calls from TWC.  (Compl. ¶¶ 15-16.)

### III.    ARGUMENT

Given that the parties have agreed to arbitrate disputes between them, Plaintiff's attempt to litigate this dispute in federal court is improper and should be dismissed.  The parties executed a valid and binding Arbitration Clause, agreeing to arbitrate <u>any</u> disputes between them.  Moreover, the parties have agreed that whether any particular dispute is covered by the Arbitration Clause is to be resolved by the arbitrator.  Accordingly, TWC requests that this Court dismiss this case or, in the alternative, stay this case pending the arbitrator's determination as to whether this dispute falls within the parties' Arbitration Clause.

### A. Legal Standard for Motion to Compel Arbitration

As stated by the Fifth Circuit, "it bears repeating that we remain mindful of the strong federal policy favoring arbitration." *Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 676 (5th Cir. 1999) (citing *United Offshore Company v. Southern Deepwater Pipeline Co.,* 899 F.2d 405,

---

[4] Plaintiff's allegations are taken from his Complaint.  TWC does not admit the truth of those allegations by referencing them in this Motion.

408 (5th Cir.1990); *accord Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983) (confirming that the Federal Arbitration Act "is a congressional declaration of a liberal federal policy favoring arbitration agreements.")  Indeed, "[t]he preference for arbitration is such that any doubts as to the availability of arbitration must be resolved in favor of arbitration." *Fedmet Corp*, 194 F.3d at 676.

A motion to compel arbitration is proper where (1) the parties entered in to a valid arbitration agreement; and (2) the dispute is within the scope of the agreement. *See Graves v. BP Am., Inc.*, 568 F.3d 221, 222 (5th Cir. 2009).  The parties may delegate the second inquiry to the arbitrator, so long as there "has been a clear demonstration that the parties contemplated it." *Agere Sys., Inc. v. Samsung Elec. Co., Ltd.*, 560 F.3d 337, 339 (5th Cir. 2009) (reversing and remanding to allow the arbitrator to determine the scope of arbitration agreement).  Accordingly, "even the issue of arbitrability 'may be submitted to binding arbitration.'" *Id.* (internal quotation marks omitted); *accord Rent-A-Ctr., W. Inc. v. Jackson*, 130 S. Ct. 2772, 2777 (2010) ("Arbitration agreements that clearly and unmistakably show intent to assign gateway issues [such as arbitrability] to the arbitrator are fully enforceable.").)

Where the parties have agreed that the arbitrator will determine whether a dispute falls within the scope of the arbitration agreement, the Court need only conduct a limited inquiry to determine whether "the assertion of arbitrability is wholly groundless." *Agere*, 560 F.3d at 340. Here, TWC's assertion of arbitrability is clearly not groundless, given that the Arbitration Clause expressly covers **any dispute** between the parties.  Therefore, this Court should dismiss or stay this case, allow the parties to proceed with arbitration, and defer to the parties' agreement to allow the arbitrator to determine whether Plaintiff's claims are covered by the Arbitration Clause.

   B. **The Parties' Arbitration Agreement is Valid.**

The Arbitration Clause clearly demonstrates that the parties have entered into a valid arbitration agreement.  The validity of the arbitration agreement is governed by "ordinary state-law principles that govern the formation of contracts." *See Graves*, 568 F.3d at 222.  As the Supreme Court has held, "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989).  Here, Plaintiff signed his Work Order purchasing high-speed internet services from TWC, and by doing so and using those services, Plaintiff accepted and agreed to be bound by the Subscriber Agreement.  (Subscriber Agreement p. 1.)  The Arbitration Clause and opt-out provision are prominently identified on both documents.

Here, the Subscriber Agreement <u>highlighted</u> the arbitration clause by referencing the arbitration clause on the first page of the Subscriber Agreement, in bold, red, capital letters and further expressly informed Plaintiff that he could opt out of the agreement if he wished. (Subscriber Agreement p. 1.)  The Work Order similarly highlighted the Arbitration Clause and option to opt-out.  This level of enhanced notice was provided by TWC not as a legal requirement, but to make sure that customers make knowing choices.  Plaintiff willingly signed the Work Order, accepted cable internet service from TWC, and never opted out of the Arbitration Clause.  The case law is clear that the Arbitration Cluase is binding as long as it is part of the parties' agreement.  *See In re H.E. Butt Grocery Co.,* 17 S.W.3d 360, 370–71 (Tex. App. 2000).  Therefore, the Arbitration Clause is valid and enforceable.

### C. <u>The Parties Clearly and Unmistakably Agreed that the Arbitrator Will Decide Arbitrability.</u>

The Arbitration Clause sets forth the parties' agreement that the arbitrator would determine whether any dispute was covered by the Arbitration Clause. The Arbitration Clause expressly states that "[t]he arbitrator will decide whether a dispute can be arbitrated." (Subscriber Agreement ¶ 15(b).). The Fifth Circuit Court of Appeals has confirmed that such an express contractual provision demonstrates the parties' "unmistakable" intent to "to delegate the power to decide arbitrability to the arbitrator." *See Agere*, 560 F.3d at 340 (holding that contract provision providing that the arbitrator "shall determine issues of arbitrability" demonstrated clear and unmistakable agreement between the parties).[5]

The parties' intent to delegate arbitrability to an arbitrator is further demonstrated by the Arbitration Clause's express incorporation of the American Arbitration Association's Commercial Arbitration Rules (Subscriber Agreement ¶ 15(a).). The AAA's rules state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." (AAA Rule 7(a).)[6] Courts nationwide have consistently held that where the parties agree "to a broad arbitration clause and explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005); *see also Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1372–73 (Fed. Cir.

---

[5] The scope of the arbitration agreement "is answered by applying the federal substantive law of arbitrability." *Id.* (internal quotation marks omitted).

[6] A copy of the AAA's Commercial Arbitration Rules is available at http://www.adr.org/cs/idcplg?IdcService=GET_FILE&dDocName=ADRSTG_004103&RevisionSelectionMethod=LatestReleased

2006) (concluding that agreement's incorporation of AAA rules clearly and unmistakably showed parties' intent to delegate issue of determining arbitrability to arbitrator); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332–33 (11th Cir. 2005) (holding that by incorporating AAA Rules into arbitration agreement, parties clearly and unmistakably agreed that arbitrator should decide whether arbitration clause was valid); *Citifinancial, Inc. v. Newton*, 359 F. Supp. 2d 545, 549–52 (S.D. Miss. 2005) (same); *Sleeper Farms v. Agway, Inc.*, 211 F. Supp. 2d 197, 200 (D. Me. 2002) (same).  Therefore, the Arbitration Clause's express incorporation of the AAA's Rules <u>on its own</u> would be sufficient evidence of the parties' agreement to delegate arbitrability to the arbitrator.  Here, however, the Arbitration Clause is even more explicit – it expressly states that the parties agreed that "[t]he arbitrator will decide whether a dispute can be arbitrated."  (Subscriber Agreement ¶ 15(b).)

Moreover, given the broad scope of the Arbitration Clause, the arbitrability of the parties' dispute is clear and TWC's argument for arbitration is far from "wholly groundless." *Agere*, 560 F.3d at 340.  The Arbitration Clause expressly covers "**[A]ny dispute, claim, or controversy between [Plaintiff] and [TWC] regarding any aspect of [his] relationship with [TWC], including those based on events that occurred prior to the date of this Agreement.**" (Subscriber Agreement ¶ 16(e).)  "Arbitration clauses that apply to 'all claims, demands, disputes or controversies of every kind or nature' are deemed to be very broad and cover all possible claims that might arise." *See Jones v. Regions Bank*, 719 F. Supp. 2d 711, 715 (S.D. Miss. 2010) (quoting *Municipal Energy Agency of Mississippi v. Big Rivers Elec. Corp.,* 804 F.2d 338, 342 (5th Cir.1986)).  Indeed, the Fifth Circuit has recognized "[i]t is difficult to imagine broader general language" than an agreement to arbitrate "any dispute."  *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co. (Pemex)*, 767 F.2d 1140, 1145 (5th Cir. 1985).  Moreover,

"[w]henever the scope of an arbitration clause is in question, the court should construe the clause in favor of arbitration." *City of Meridian, Miss. v. Algernon Blair, Inc.*, 721 F.2d 525, 527 (5th Cir. 1983) (citing *United Steelworkers v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582 (1960)). Accordingly, the Fifth Circuit "presume[s] that arbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Commerce Park of DFW Freeport v. Mardian Construction Co.,* 729 F.2d 334, 338 (5th Cir.1984) (internal quotation marks omitted).

Given the scope of the Arbitration Clause and the presumption in favor of arbitration, it is clear that the arbitrator must determine whether Plaintiff's claims are arbitrable. Indeed, Plaintiff's dispute raised in this lawsuit centers on his relationship with TWC. He alleges that TWC "harassed" him by calling him on six occasions in an attempt to collect a debt, which was apparently owed by a different TWC customer. (Compl. ¶¶ 9-18.) Accordingly, Plaintiff's dispute falls squarely within the scope of the Arbitration Clause. To the extent Plaintiff has any issue with the arbitrability of this dispute, he must raise it with the arbitrator. *See Agere,* 560 F.3d at 340 (holding that the "resolution of [the] plausible arguments" regarding arbitrability "is left for the arbitrator"). Therefore, this Court should enforce the parties' Arbitration Clause and dismiss Plaintiff's Complaint. *See Michael Angelo's Gourmet Foods, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* A-05-CA-912-SS, 2006 WL 2241225 (W.D. Tex. Aug. 4, 2006) (holding that "dismissal, rather than a stay pending the outcome of arbitration" was proper where the plaintiff's claims "fall within the coverage of the parties' agreement to arbitrate"); *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.").

## IV.  CONCLUSION

In signing up for services with TWC, Plaintiff expressly agreed to submit any dispute with TWC to arbitration and to permit the arbitrator to resolve any issues of arbitrability.  If Plaintiff did not wish to resolve disputes through arbitration, or not submit "all disputes" to arbitration and have the arbitrator determine issues of arbitrability, Plaintiff could easily have opted out of the parties' mutual Arbitration Clause.  He did not do so.  Therefore, TWC respectfully requests that this Court grant TWC's Motion to Dismiss or, in the Alternative, to Stay and Compel Arbitration.

Respectfully submitted this 30th day of July, 2012.

        **WARGO & FRENCH LLP**
        999 Peachtree Street. 26th Floor
        Atlanta, Georgia 30309
        Telephone:  (404) 853-1500
        Telecopy:  (404) 853-1501

        Michael S. French[*]
        Georgia Bar No. 276680
        Paul G. Sherman[*]
        Georgia Bar No. 100153
        John P. Mittelbach[*]
        Georgia Bar No. 472078
        *\* motion for pro hac vice forthcoming*

        **By:     /s/ Paul Sherman                  **
               Paul Sherman

        **CORNELL SMITH & MIERL, LLP**
        1607 West Avenue
        Austin, Texas 78701
        Telephone:   (512) 328-1540
        Telecopy:     (512) 328-1541

        Elizabeth "Betsy" S. Chestney
        Texas State Bar No. 24038103

        **By:     /s/ Elizabeth S. Chestney           **
               Elizabeth S. Chestney


        *ATTORNEYS FOR DEFENDANT*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have this 30th day of July, 2012, I electronically filed a true and correct copy of this document with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to the following counsel of record:

> **James L. Davidson**
> Greenwald Davidson PLLC
> 5550 Glades Road, Suite 500
> Boca Raton, FL 33431
> 561-826-5477
> Fax: 561-961-5684
> Email: jdavidson@mgjdlaw.com
>
> **Michael L. Greenwald**
> Greenwald Davidson PLLC
> 5550 Glades Road
> Boca Raton, FL 33431
> (561) 826-5477
> Fax: (561) 869-1919
> Email: mgreenwald@mgjdlaw.com
>
> **Dennis Robert Kurz**
> Weisberg & Meyers, LLC
> Two Allen Center
> 1200 Smith St., 16th Fl.
> Houston, TX 77002
> (888) 595-9111 x 412
> Fax: (866) 565-1327
> Email: ecf@attorneysforconsumers.com

                                                   _/s/ Betsy Chestney_____
                                                   Betsy Chestney