UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DOUGLAS MASTERS, Individually and on Behalf of All Other Similarly Situated, | ) ) ) |
| Plaintiff | ) ) |
| v. | ) CIVIL ACTION NO. |
| | ) 1:12-cv-000451 |
| TIME WARNER CABLE INC., | ) ) |
| Defendant. | ) ) ) ) |

**DEFENDANT TIME WARNER CABLE INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY AND COMPEL ARBITRATION**

## I.   INTRODUCTION

Plaintiff is a customer of Time Warner Cable Inc. ("TWC"). Plaintiff brought this suit seeking to certify national and statewide classes for the purposes of pursuing claims under the federal Telephone Consumer Protection Act and § 392.302(f) of the Texas Financial Code, respectively. As a basis for his Complaint, Plaintiff alleges that TWC called his cell phone in a mistaken attempt to collect a debt owed by another TWC customer.

When Plaintiff became a TWC customer, he expressly agreed to arbitrate any dispute that arose between him and TWC. The parties' arbitration agreement also clearly provides that the arbitrator (not a court) must resolve any issues regarding the scope and applicability of the arbitration agreement. Accordingly, Plaintiff's attempt to bring his dispute against TWC in federal court is improper, and TWC requests that this Court dismiss or stay this lawsuit and compel Plaintiff to submit this dispute to arbitration as agreed to by the parties.

## II.     RELEVANT FACTS

### A. Plaintiff's Relationship with TWC

Plaintiff has been a TWC customer since 2009.  (Amended Compl (DE 21), ¶ 9.) Specifically, Time Warner Cable provides high-speed internet services to Plaintiff.  (Amended Compl. ¶ 9.)  At the time these services were installed, Plaintiff signed a work order[1] (the "Work Order") in which he expressly accepted and agreed to be bound by the terms of TWC's Residential Services Subscriber Agreement, which were expressly incorporated by reference into the Work Order.  (Tagg. Decl., ¶¶ 5-6.)  The Residential Services Subscriber Agreement included both an arbitration provision and a provision that TWC had the right to modify the terms of the agreement.  (*Id.*)

In 2010, TWC revised the Residential Services Subscriber Agreement to, among other things, add an opt-out option to the arbitration provision, providing that customers had 30 days to opt out of arbitration provision if they so wished.  (*Id.*, ¶ 7.)  TWC informed Masters in a May 2010 billing statement about the revised Residential Services Subscriber Agreement and specifically noted that the agreement included an arbitration clause and an opt-out option.[2]  (*Id.*)

The current and operative version of Time Warner Cable's Residential Services Subscriber Agreement (the "Subscriber Agreement") is available online at http://help.twcable.com/html/twc_sub_agreement.html.  (*Id.*, ¶ 8.)  This site is available to current and prospective customers alike at all times.[3]  (*Id.*)

---

[1]  A true and correct copy of the Work Order is attached as Exhibit A to the Second Declaration of Ed Tagg (the "Tagg Declaration" or "Tagg Decl."), which is attached hereto as Exhibit 1.

[2]  A true and correct copy of the May 2010 billing statement sent to Masters is attached as Exhibit B to the Tagg Declaration.

[3]  A true and correct copy of the Subscriber Agreement is attached as Exhibit C to the Tagg Declaration.

The Subscriber Agreement contains a broad arbitration clause that covers <u>any</u> dispute between Plaintiff and TWC (the "Arbitration Clause"), including the alleged dispute which gives rise to this litigation.  (Subscriber Agreement, ¶ 15.)  The first page of the Subscriber Agreement expressly discloses the existence of the Arbitration Clause in bold, capital, red letters that are set off from the surrounding text by a prominent box.  (Subscriber Agreement, p. 1.)  The Work Order similarly discloses in prominent text adjacent to the signature line that Plaintiff was agreeing to arbitration and waiving any right to a jury trial for any disputes with TWC.  (Work Order, p. 1.)

The Arbitration Clause is set forth in Paragraph 15 of the Subscriber Agreement.  The Clause states that both Masters and TWC agree that, if they cannot resolve a "Dispute" informally, the parties will:

> submit the Dispute to the American Arbitration Association for resolution under its Commercial Arbitration Rules or, by separate mutual agreement, to another arbitration institution.  As an alternative, you may bring your claim in your local "small claims" court, if its rules permit it.

(Subscriber Agreement, ¶ 15(a).)  A "Dispute" is defined very broadly to include:

> [A]ny dispute, claim, or controversy between you and [TWC] regarding any aspect of your relationship with us, including those based on events that occurred prior to the date of this Agreement.

(Subscriber Agreement ¶ 16(e).)

Nor is this an arbitration requirement foisted upon all TWC customers.  The Arbitration Clause very clearly states that any customer that does not want to waive his

3

ability to bring claims within the court system may opt out of the Arbitration Clause. (Subscriber Agreement ¶ 15(e).)[4]

The Arbitration Clause also clearly and unmistakably states that "**The arbitrator will decide whether a dispute can be arbitrated**." (Subscriber Agreement ¶ 15(b) (emphasis added).)  Therefore, whether Plaintiff's claims in this litigation fall within the broad scope of the Arbitration Clause is for an arbitrator to decide.

### B. The Alleged Basis for Plaintiff's Claims[5]

In this lawsuit, Plaintiff seeks to certify national and statewide classes to pursue claims under the Telephone Consumer Protection Act and § 392.302(f) of the Texas Financial Code, respectively, because he allegedly received auto-dialed telephone calls on his cell phone from Time Warner Cable between October 2011 and April 2012.  The Plaintiff believes these calls are actionable as they were purportedly made with the attempt to harass and without the Plaintiff's consent.  (Amended Compl., ¶¶ 11-37.)  TWC disputes the Plaintiff's allegations. Whether the claims are actionable, however, is not germane to the issue of whether this case should be heard in federal court or within an arbitration proceeding.

### III.   ARGUMENT

Given that the parties have agreed to arbitrate disputes between them, Plaintiff's attempt to litigate this dispute in federal court is improper and this case should be dismissed.  The parties

---

[4]  The arbitration disclosure on the first page of the Subscriber Agreement also expressly indicates that Plaintiff could "opt out" of the arbitration requirement pursuant to Section 15 of the Subscriber Agreement.  This provision clearly states that Plaintiff was not required to accept the Arbitration Clause and could have opted out of the arbitration requirement by notifying TWC in writing within 30 days of being notified of the opt-out option. (Subscriber Agreement, ¶ 15(e).)  Plaintiff did not opt out of the Arbitration Clause.  (Tagg Decl., ¶ 9.)

[5]  Plaintiff's allegations are taken from his Complaint.  TWC does not admit the truth of those allegations by referencing them in this Motion.

executed a valid and binding Arbitration Clause, and have agreed to arbitrate <u>any</u> disputes between them.  Moreover, the parties have agreed that whether any particular dispute is covered by the Arbitration Clause is to be resolved by the arbitrator.  Accordingly, TWC requests that this Court dismiss this case or, in the alternative, stay this case pending the arbitrator's determination as to whether this dispute falls within the parties' Arbitration Clause.

### A. Legal Standard for Motion to Compel Arbitration

As stated by the Fifth Circuit, "it bears repeating that we remain mindful of the strong federal policy favoring arbitration." *Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 676 (5th Cir. 1999) (citing *United Offshore Company v. Southern Deepwater Pipeline Co.,* 899 F.2d 405, 408 (5th Cir.1990); *accord Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24 (1983) (confirming that the Federal Arbitration Act "is a congressional declaration of a liberal federal policy favoring arbitration agreements.")  Indeed, "[t]he preference for arbitration is such that any doubts as to the availability of arbitration must be resolved in favor of arbitration." *Fedmet Corp*, 194 F.3d at 676.

A motion to compel arbitration is proper where (1) the parties entered into a valid arbitration agreement; and (2) the dispute is within the scope of the agreement.  *See Graves v. BP Am., Inc.*, 568 F.3d 221, 222 (5th Cir. 2009).  The parties may delegate the second inquiry to the arbitrator, so long as there "has been a clear demonstration that the parties contemplated it." *Agere Sys., Inc. v. Samsung Elec. Co., Ltd.*, 560 F.3d 337, 339 (5th Cir. 2009) (reversing and remanding to allow the arbitrator to determine the scope of arbitration agreement).  Accordingly, "even the issue of arbitrability 'may be submitted to binding arbitration.'" *Id.* (internal quotation marks omitted); *accord Rent-A-Ctr., W. Inc. v. Jackson*, 130 S. Ct. 2772, 2777 (2010)

("Arbitration agreements that clearly and unmistakably show intent to assign gateway issues [such as arbitrability] to the arbitrator are fully enforceable.").)

Where the parties have agreed that the arbitrator will determine whether a dispute falls within the scope of the arbitration agreement, the Court need only conduct a limited inquiry to determine whether "the assertion of arbitrability is wholly groundless." *Agere*, 560 F.3d at 340. Here, TWC's assertion of arbitrability is clearly not "wholly groundless," given that the Arbitration Clause expressly covers any dispute between the parties. Therefore, this Court should dismiss or stay this case, allow the parties to proceed with arbitration, and defer to the parties' agreement to allow the arbitrator to determine whether Plaintiff's claims are covered by the Arbitration Clause.

**B. The Parties' Arbitration Agreement is Valid.**

The Arbitration Clause clearly demonstrates that the parties have entered into a valid arbitration agreement. The validity of the arbitration agreement is governed by "ordinary state-law principles that govern the formation of contracts." *See Graves*, 568 F.3d at 222. As the Supreme Court has held, "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989). Here, Plaintiff signed his Work Order purchasing high-speed internet services from TWC, and by doing so and using those services, Plaintiff accepted and agreed to be bound by the Subscriber Agreement. (Subscriber Agreement p. 1.) The Arbitration Clause was prominently identified on both documents.

Here, the Subscriber Agreement <u>highlights</u> the arbitration clause by referencing the arbitration clause on the first page of the Subscriber Agreement, in bold, red, capital letters and further expressly informs Plaintiff that he could opt out of the agreement if he wished. (Subscriber Agreement p. 1.)  The Work Order similarly highlighted the Arbitration Clause. This level of enhanced notice was provided by TWC not as a legal requirement, but to ensure that customers make knowing choices.  Plaintiff willingly signed the Work Order, accepted cable internet service from TWC, and never opted out of the Arbitration Clause.  The case law is clear that the Arbitration Clause is binding as long as it is part of the parties' agreement.  *See In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 370–71 (Tex. App. 2000).  Therefore, the Arbitration Clause is valid and enforceable.

### C. **The Parties Clearly and Unmistakably Agreed that the Arbitrator Will Decide Arbitrability.**

The Arbitration Clause sets forth the parties' agreement that the arbitrator would determine whether any dispute was covered by the Arbitration Clause.  The Arbitration Clause expressly states that "[t]he arbitrator will decide whether a dispute can be arbitrated." (Subscriber Agreement ¶ 15(b).).  The Fifth Circuit Court of Appeals has confirmed that such an express contractual provision demonstrates the parties' "unmistakable" intent to "to delegate the power to decide arbitrability to the arbitrator."  *See Agere*, 560 F.3d at 340 (holding that contract provision providing that the arbitrator "shall determine issues of arbitrability" demonstrated clear and unmistakable agreement between the parties).[6]

The parties' intent to delegate arbitrability to an arbitrator is further demonstrated by the Arbitration Clause's express incorporation of the American Arbitration Association's

---

[6] The scope of the arbitration agreement "is answered by applying the federal substantive law of arbitrability." *Id.* (internal quotation marks omitted).

7

Commercial Arbitration Rules (Subscriber Agreement ¶ 15(a).). The AAA's rules state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." (AAA Rule 7(a).)[7] Courts nationwide have consistently held that where the parties agree "to a broad arbitration clause and explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005); *see also Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1372–73 (Fed. Cir. 2006) (concluding that agreement's incorporation of AAA rules clearly and unmistakably showed parties' intent to delegate issue of determining arbitrability to arbitrator); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332–33 (11th Cir. 2005) (holding that by incorporating AAA Rules into arbitration agreement, parties clearly and unmistakably agreed that arbitrator should decide whether arbitration clause was valid); *Citifinancial, Inc. v. Newton*, 359 F. Supp. 2d 545, 549–52 (S.D. Miss. 2005) (same); *Sleeper Farms v. Agway, Inc.*, 211 F. Supp. 2d 197, 200 (D. Me. 2002) (same). Therefore, the Arbitration Clause's express incorporation of the AAA's Rules <u>on its own</u> would be sufficient evidence of the parties' agreement to delegate arbitrability to the arbitrator. Here, however, the Arbitration Clause is even more explicit – it expressly states that the parties agreed that "[t]he arbitrator will decide whether a dispute can be arbitrated." (Subscriber Agreement ¶ 15(b).)

Given the broad scope of the Arbitration Clause, the arbitrability of the parties' dispute is clear and TWC's argument for arbitration is far from "wholly groundless." *Agere*, 560 F.3d at

---

[7] A copy of the AAA's Commercial Arbitration Rules is available at
http://www.adr.org/cs/idcplg?IdcService=GET_FILE&dDocName=ADRSTG_004103&RevisionSelectionMethod=LatestReleased

340.  Moreover, "[w]henever the scope of an arbitration clause is in question, the court should construe the clause in favor of arbitration." *City of Meridian, Miss. v. Algernon Blair, Inc.*, 721 F.2d 525, 527 (5th Cir. 1983) (citing *United Steelworkers v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582 (1960)).  Accordingly, the Fifth Circuit "presume[s] that arbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *Commerce Park of DFW Freeport v. Mardian Constr. Co.,* 729 F.2d 334, 338 (5th Cir.1984) (internal quotation marks omitted).

Given the scope of the Arbitration Clause and the presumption in favor of arbitration, it is clear that the arbitrator must determine whether Plaintiff's claims are arbitrable.  Indeed, Plaintiff's dispute raised in this lawsuit centers on his relationship with TWC.  He alleges that TWC "harassed" him by calling him in an attempt to collect a debt, which was purportedly owed by a different TWC customer.  (Amended Compl. ¶¶ 11-36.)  Accordingly, Plaintiff's dispute falls squarely within the scope of the Arbitration Clause.  To the extent Plaintiff has any issue with the arbitrability of this dispute, he must raise it with the arbitrator. *See Agere,* 560 F.3d at 340 (holding that the "resolution of [the] plausible arguments" regarding arbitrability "is left for the arbitrator").  Therefore, this Court should enforce the parties' Arbitration Clause and dismiss Plaintiff's Complaint. *See Michael Angelo's Gourmet Foods, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.,* A-05-CA-912-SS, 2006 WL 2241225 (W.D. Tex. Aug. 4, 2006) (holding that "dismissal, rather than a stay pending the outcome of arbitration" was proper where the plaintiff's claims "fall within the coverage of the parties' agreement to arbitrate"); *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.")

9

## IV. CONCLUSION

In signing up for services with TWC, Plaintiff expressly agreed to submit any dispute with TWC to arbitration and to permit the arbitrator to resolve any issues of arbitrability. If Plaintiff did not wish to resolve disputes through arbitration, or not submit "all disputes" to arbitration and have the arbitrator determine issues of arbitrability, Plaintiff could easily have opted out of the parties' mutual Arbitration Clause. He did not do so. Therefore, TWC respectfully requests that this Court grant TWC's Motion to Dismiss or, in the Alternative, to Stay and Compel Arbitration.

Respectfully submitted this 6th day of September, 2012.

**CORNELL SMITH & MIERL, LLP**
1607 West Avenue
Austin, Texas 78701
Telephone:  (512) 328-1540
Telecopy:   (512) 328-1541

Elizabeth "Betsy" S. Chestney
Texas State Bar No. 24038103

**WARGO & FRENCH LLP**
999 Peachtree Street 26th Floor
Atlanta, Georgia 30309
Telephone:  (404) 853-1500
Telecopy:  (404) 853-1501

Michael S. French[*]
Georgia Bar No. 276680
Paul G. Sherman[*]
Georgia Bar No. 100153
Michael Wolak*
Georgia Bar No. 773197
*admitted pro hac vice*

1888 Century Park E., Suite 1520
Los Angeles, California 90403
Telephone: (310) 853-6300
Telecopy:  (310) 853-6301

John P. Mittelbach*
California Bar No. 284088
*admitted pro hac vice*


By:_ /s John Mittelbach
         John Mittelbach


*ATTORNEYS FOR DEFENDANT*

11

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that this 6th day of September, 2012, I electronically filed a true and correct copy of this document with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to the following counsel of record:

>**James L. Davidson**
>Greenwald Davidson PLLC
>5550 Glades Road, Suite 500
>Boca Raton, FL 33431
>561-826-5477
>Fax: 561-961-5684
>Email: jdavidson@mgjdlaw.com
>
>**Michael L. Greenwald**
>Greenwald Davidson PLLC
>5550 Glades Road
>Boca Raton, FL 33431
>(561) 826-5477
>Fax: (561) 869-1919
>Email: mgreenwald@mgjdlaw.com
>
>**Dennis Robert Kurz**
>Weisberg & Meyers, LLC
>Two Allen Center
>1200 Smith St., 16th Fl.
>Houston, TX 77002
>(888) 595-9111 x 412
>Fax: (866) 565-1327
>Email: ecf@attorneysforconsumers.com

                                                       _/s John Mittelbach_
                                                       John Mittelbach