IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

|  |  |  |
|---|---|---|
| DOUGLAS MASTERS, Individually and On Behalf of All Others Similarly Situated, | x : : : : | **Civil Action No.: 1:12-cv-000451-SS** |
| Plaintiff, | : : |  |
| vs. | : : |  |
| TIME WARNER CABLE, INC., | : : |  |
| Defendant. | : : x |  |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY AND COMPEL ARBITRATION**

**I.   INTRODUCTION**

This case arises out of Defendant Time Warner Cable, Inc.'s ("Defendant") violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, and §392.302(4) of the Texas Financial Code – not out of the provision of any services by Defendant or any relationship between Defendant and Plaintiff Douglas Masters ("Plaintiff").  Despite this, Defendant seeks to compel arbitration of this dispute (the "Motion"), Dkt. No. 28, based on a subscriber agreement incorporated in a work order signed by Plaintiff with "Time Warner Cable" – not Defendant – for the installation of high-speed internet services (the "Work Order").  To be clear, and contrary to Defendant's representation, Plaintiff did not "expressly agree[] to arbitrate any dispute that arose between him and" Defendant.  Dkt No. 28 at 1.  In fact, Plaintiff never entered into any agreement with Defendant as Defendant was not a party to the Work Order (or incorporated subscriber agreement), does not conduct business in Texas, never provided services to Plaintiff, and Plaintiff never provided Defendant (or "Time Warner Cable") with his cellular telephone number.[1]

Rather, Plaintiff's claims here stem from Defendant's efforts, via at least 22 automated calls to Plaintiff's cellular telephone, to contact a person named "Tessie Jubin," even after Plaintiff informed Defendant that he did not know anyone by that name.  The arbitration provisions cited by Defendant are therefore inapplicable for at least three reasons:  (1) Defendant is not a proper party to any arbitration provision; (2) this dispute does not fall under the scope of

---

[1] Even if Defendant were a party to the Work Order, Defendant's tortured reading of the arbitration provisions at issue would yield absurd results: Suppose a truck owned by Defendant crashed into a crowd of people.  Under Defendant's view, those pedestrians who happen to receive cable television through "Time Warner Cable" would be forced to arbitrate their personal injury claims while those with satellite television could file suit.  Of course, and as with Plaintiff's TCPA claims here, the injured pedestrians' claims have no connection with who their television provider is.

any arbitration provision, even if Defendant was a proper party; and (3) the arbitration provisions at issue expressly exclude claims for injunctive relief. For these reasons, and those set forth more fully herein, Defendant's Motion should be denied in its entirety.

## II.   ARGUMENT

A motion to stay proceedings pursuant to 9 U.S.C. §3 is evaluated under the same standard as motions for summary judgment under Fed. R. Civ. P. 56(c). *See Grant v. House of Blues New Orleans Rest. Corp.,* 2011 WL 1596207, at *2–*4 (E.D. La. Apr. 27, 2011) (collecting cases).[2] Thus, the movant must put forth evidence demonstrating it is entitled to compel arbitration. *Id*. To evaluate this evidence, courts apply a two-step analysis. First, the court must determine if the party has agreed to arbitrate the dispute. *Will–Drill Resources, Inc. v. Samson Resources Co.,* 352 F.3d 211, 214 (5th Cir. 2003). If so, the court then determines if "any federal statute or policy renders the claims nonarbitrable." *Id.* The first step contains two questions: (1) is there a valid agreement to arbitrate; and (2) does the dispute fall within the scope of that arbitration agreement. *Id.* The "federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). That determination is generally made on the basis of ordinary state-law principles that govern the formation of contracts. *Id.*

### A. Plaintiff's claims for injunctive relief are excluded from arbitration

As an initial matter, even if this dispute was subject to arbitration, which it is not, Plaintiff seeks, in addition to monetary damages under the TCPA and Texas law, injunctive relief preventing Defendant from making unauthorized telephone calls to his cellular phone. Dkt. No.

---

[2] Internal quotations and citations are omitted and emphasis is added unless otherwise noted.

21, Wherefore clause, (b)-(c). All versions of the subscriber agreement specifically *exclude* claims for injunctive relief from arbitration. *See* Dkt. No. 11-1 at 19, ¶14 ("Except for claims for injunctive relief …"); *see also* Dkt. No. 28-1 at 19, ¶15(b) (" … claims for injunctive orders or similar relief must be brought in a court."). Thus, even if this Court finds that the claims for monetary damages alleged here are covered by an arbitration provision, Plaintiff's claims for injunctive relief cannot be arbitrated. *See Manning v. Ardex, L.P.*, 2008 WL 2468690, at *4 (E.D. Pa. June 16, 2008) ("Therefore, it would be inappropriate for the Court to compel arbitration, when the contracted for arbitration provision specifically excludes claims for injunctive relief").

### B. Defendant has not established a valid agreement to arbitrate claims between it and Plaintiff

As set forth below, Plaintiff did not enter into an agreement with Defendant, but with "Time Warner Cable" – a separate and distinct entity. The agreement entered into between Plaintiff and "Time Warner Cable" included an arbitration provision applicable to those disputes arising out of the relationship between Plaintiff and "Time Warner Cable." The arbitration provision is devoid of any reference to Defendant. Approximately one year later, "Time Warner Cable" allegedly unilaterally broadened the arbitration provision, and added Defendant as a party, all without Plaintiff's consent or agreement. Because Defendant cannot establish that it has a valid arbitration agreement with Plaintiff, it cannot compel this matter to arbitration.

#### 1. Defendant is not a party to the 2009 Subscriber Agreement

The Work Order signed by Plaintiff incorporated a subscriber agreement. *See* Dkt. No. 11-1 at 7-23 ("2009 Agreement"). Importantly, Defendant is not a party to either the Work Order or the 2009 Agreement, *id.* at ¶¶1(a); 15(t), and Plaintiff therefore did not agree, as

3

Defendant erroneously posits, to arbitrate any claims against Defendant. Rather, the 2009 Agreement is between Plaintiff and "Time Warner Cable," abbreviated as "TWC." *Id.*[3]

The 2009 Agreement defines "TWC" as "the local Time Warner Cable-affiliated cable operator that is providing the Services over its cable system, or any cable operator to whom TWC assigns this Agreement." *Id.* at ¶15(t). Critically, the "local Time Warner Cable-affiliated cable operator" in Austin, Texas is not Defendant as Defendant, by its admission, is not registered to conduct business in Texas, and does not do business in Texas. *See* Exhibits "A" and "B" of Declaration of James L. Davidson, Esq., attached hereto as Exhibit "1" ("Davidson Dec.").[4] Rather, the "Time Warner Cable" entity that operates in Texas – and the entity that is a party to the 2009 Agreement with Plaintiff – is Time Warner Entertainment-Advance/Newhouse Partnership ("TWE-A/N"), an affiliate of Defendant. *Id.* at Exhibit "B."; *see also Botello v. COI Telecom, L.L.C.*, 2010 WL 5464824, at *2 (W.D. Tex. Dec. 30, 2010) ("The Time Warner Cable entity that operates the Austin and Corpus Christi cable systems is Time Warner Entertainment–Advance/Newhouse Partnership.").[5]

Though Defendant was not a party to the 2009 Agreement, Defendant alleges that in 2010, the "subscriber agreement" was revised to add an opt-out option to the arbitration provision, and that Plaintiff was informed of the existence of these revisions in a May 2010 billing statement. *See* Dkt. No. 28-1 at 3, ¶7 (the "2010 Revisions"). Yet, Defendant fails to submit the 2010 Revisions, rendering it impossible for Plaintiff or the Court to determine the

---

[3] The 2009 Agreement contains an arbitration provision that compels arbitration for any controversy or claim arising out of the 2009 Agreement, except for claims for injunctive relief.

[4] Furthermore, Defendant has offered no evidence that it is registered to, or, in fact, does, use the trade name "Time Warner Cable" in Texas.

[5] Defendant has not advanced any theory as to why it can enforce an arbitration provision in a subscriber agreement that it is not a party to.

exact revisions made by "TWC" (and not Defendant) to its arbitration provision at the time. Because Defendant was not a party to the 2009 Agreement, and there is no record evidence regarding the 2010 Revisions, this Court should not compel arbitration based upon either provision. *See Westmoreland v. Sadoux,* 299 F.3d 462, 465-66 (5th Cir. 2002) (holding that arbitration agreements "must be in writing and signed by the part[ies]" and that nonsignatories cannot compel arbitration merely as an agent of one of the signatories).

### 2.  The 2012 Subscriber Agreement is not effective

Having failed to establish that an agreement to arbitrate existed between Plaintiff and Defendant prior to 2012, Defendant nonetheless asks this Court to accept as fact that at some point after Plaintiff signed the Work Order, Defendant was unilaterally added as a party to a subsequent version of the subscriber agreement. Defendant fails to establish when or how this happened, or when, how or if Plaintiff consented to such a material change in terms. Instead, Defendant skips to the finish line by relying on what it deems to be the "current version" of the subscriber agreement (the "2012 Agreement"). Dkt. No. 28 at 6.[6] Defendant's reliance on the 2012 Agreement is flawed for a number of reasons.

#### a.  Defendant has not properly authenticated the 2012 Agreement

Defendant submits no evidence that the 2012 Agreement was in effect at the time Plaintiff's claims arose, or when this lawsuit was filed. Instead, the 2012 Agreement is sworn to be current as of the September 4, 2012 signing of the Tagg Declaration, some four months after the initial lawsuit in this case was filed. Dkt. No. 28-1 at 3, ¶8. Defendant's failure to produce

---

[6] The terms of the 2012 Agreement are materially different from the terms of the 2009 Agreement. Relevant here, the arbitration clause was significantly broadened to encompass any dispute, claim, or controversy between Plaintiff and "TWC" regarding any aspect of Plaintiff's relationship with "TWC." Dkt. No. 28-1 at 20, ¶¶15-16. Additionally, the definition of "TWC" was amended to add Defendant (confirming that, in fact, Defendant was not a party to the 2009 Agreement). *Id*. at ¶16(o).

the subscriber agreement that it alleges was in place at the time Plaintiff's claims accrued precludes a finding that a valid arbitration agreement exists. *See Prevost v. Burns Int'l. Sec. Servs. Corp.*, 126 F. Supp. 2d 439, 441–42 (S.D. Tex. 2000) (finding that fact issues regarding whether the parties had a valid arbitration agreement precluded dismissal of the action).[7]

### b. The change in terms provision in the 2009 Agreement did not authorize "TWC" to unilaterally add a party

Implicit in Defendant's Motion is that the "change in terms" provision in the 2009 Agreement, *see* Dkt. No. 11-1 at 7, ¶1(b), allowed "TWC" to change any terms at any time, including adding any entity of its choosing as a party to the arbitration provision at any time. Yet, there is nothing in the 2009 Agreement that supports this position.

The court in *Stone v. Golden Wexler & Sarnese, P.C.*, 341 F. Supp. 2d 189 (E.D.N.Y. 2004) rejected an analogous argument after examining a similar change in terms provision. There, the focus was on whether the defendant could unilaterally add an arbitration provision using a "change in terms" clause. *Id.* The court, in rejecting the defendant's argument that it could unilaterally make any change it wanted as long as it followed the procedures in the Customer Agreement, held that the change-in-terms provision did not contemplate the addition of an arbitration agreement such that plaintiff should have anticipated that the defendant could change the method for resolving disputes. *Id.* at 197.

The same reasoning applies here. Defendant is not a party to the 2009 Agreement. Additionally, Defendant provides no evidence that Plaintiff and "TWC" contemplated that "TWC" could unilaterally amend the agreement to add Defendant as a party after the agreement was accepted. Having failed to do so, it would be unfair for Defendant's affiliate to use an

---

[7] In theory, Defendant could have been served with this lawsuit, changed the subscriber agreement on its website to add itself as a party, and then moved to compel arbitration based on that post-lawsuit revision.

6

amorphous change in terms provision to add Defendant – and anyone else of its choosing – as a party to the agreement, and then render any claim by Plaintiff against potentially innumerable third parties subject to arbitration.  *See Badie v. Bank of Am.*, 67 Cal.App.4th 779, 796 (1998).

### c. Defendant has not established that it provided notice to Plaintiff of its addition to the subscriber agreement

While the 2009 Agreement purports to give "TWC" the unilateral right to amend the general terms of the agreement by updating the online version of the agreement on its website, *see* Dkt. No. 11-1 at 7, ¶1(b), a separate provision of the 2009 Agreement requires "TWC" to notify Plaintiff of "any **significant change(s)** in [the] Agreement …." *Id.* ¶1(c).[8]  Adding a new party to the subscriber agreement and dramatically broadening the scope of the arbitration provision to include all disputes arising out of Plaintiff's relationship with that unilaterally added party constitutes "significant changes" for which notice is required.

While Defendant submits that Plaintiff is not on a list of customers who have opted-out of the "arbitration clause contained in the Subscriber Agreement," Dkt No. 28-1 at 3, ¶9, it is entirely unclear which version of the subscriber agreement Defendant is referencing.  Further, Defendant has not presented any evidence (1) that it did in fact notify Plaintiff of the post-2010 revisions to the subscriber agreement (including that Defendant was being made a party to the subscriber agreement for the first time) or (2) that Plaintiff accepted the new terms.  In fact, the record is devoid of any evidence establishing that Plaintiff was made aware that Defendant was being made a party, unilaterally, to an arbitration agreement between Plaintiff and "TWC." Without such a showing, Plaintiff cannot be bound by those substantive changes.  *See Nasir v. Air Liquide Am. Corp.*, 2004 WL 2236658, at *3 (N.D. Tex. Oct. 1, 2004) (holding that the

---

[8] Defendant concedes this distinction by asserting that Plaintiff was notified in a billing statement of the revisions made in 2010 to the 2009 Agreement, as opposed to just posting those revisions on the website. Dkt. No. 28-1 at 3, ¶7.

plaintiff could not be bound by the defendant's unilateral changes to an arbitration policy because the defendant did not offer evidence of notice of the changes to the plaintiff.).

### d. The change in terms provision is unenforceable

Notice issues aside, the manner in which "TWC" allows itself to amend the subscriber agreement makes it impossible for Plaintiff to learn of, and opt-out of, what could be innumerable amendments to the subscriber agreement. Unless Plaintiff is actively monitoring the online version of the subscriber agreement on a minute-by-minute basis, Plaintiff would have no way of knowing that "TWC" had amended the agreement. Even then, because the website does not state when or how the "current version" of the subscriber agreement was previously amended, Plaintiff would have to regularly compare his version, word-for-word, to the website version, to determine if the website version had been amended. Plaintiff would have to undertake this task, repeatedly, for as long as he remained an Internet customer. Not only does this impermissibly shift the burden or providing notice of a material amendment to Plaintiff, but, given the Internet services contracted for are always in use, the terms of the subscriber agreements make it impossible for consumers to opt-out because the moment an amendment is made, almost all customers will have used the service and thus be bound by the amendments.

## C. The dispute does not fall within the scope of any arbitration agreement

Even if the various subscriber agreements applied to Defendant, which, as set forth above, they do not, this dispute falls far outside their terms. Seeking to perform an end-around of this Court's authority to determine the scope of the arbitration provisions potentially at issue, Defendant argues that a one-sentence provision buried in 17 pages of boilerplate demonstrates the parties' unmistakable intent to delegate the power to decide arbitrability to an arbitrator. Dkt. No. 28 at 7-9. Of course, what Defendant refers to as the parties' "unmistakable intent" is one

line, found on the 14th page of a form document prepared by Defendant's affiliate and to which Plaintiff had no input or authority to change. Defendant's reliance on *Agere Systems, Inc. v. Samsung Electronics Co., Ltd.*, 560 F.3d 337 (5th Cir. 2009), therefore is misplaced.[9] Even if *Agere* was applicable, the Court still must determine whether "the assertion of arbitrability [is] wholly groundless." *Id*. As set forth below, Defendant's position that this dispute between it and Plaintiff is subject to arbitration is wholly groundless and should be rejected.

### 1. The express terms of the 2009 Agreement do not cover this dispute

This dispute falls outside the scope of the 2009 Agreement because the arbitration provision applies only to a "controversy or claim arising out of or related to [the Subscriber] Agreement." Dkt. No. 11-1 at 13-14, ¶14. The term "Agreement" is defined as the "Services Subscriber Agreement," *id*. at ¶15(b), and "services" are defined as all services provided to Plaintiff by "TWC," including "High Speed Data Service." *Id*. at ¶15(m). Critically, this dispute bears no relation to the provision of services by "TWC" to Plaintiff. Rather, this dispute arises from Defendant's repeated, harassing telephone calls to Plaintiff's cellular telephone for the purposes of collecting a purported debt by someone unknown to Plaintiff. Defendant did not obtain Plaintiff's cellular telephone number from Plaintiff and the alleged debt is not related to the provision of services to Plaintiff. To be sure, it is mere coincidence that Plaintiff happens to be a "TWC" subscriber as there is no connection whatsoever between Plaintiff's claims here and

---

[9] In *Agere*, the Fifth Circuit gave force to an arbitration agreement negotiated between Samsung and AT&T, two undoubtedly sophisticated entities that reached their agreement after negotiation. *Id*. at 338-39. In sharp contrast here, that the agreements contain a particular sentence does not mean that the "parties unmistakably intend[ed] to delegate the power to decide arbitrability to an arbitrator," as required under *Agere*. *Id*. at 340. Rather, "TWC" drafted the agreements, which are contracts of adhesion, to be as much in its favor as possible. This unilateral imposition of onerous terms certainly does not equate to a mutual, unmistakable intent as required under *Agere* to strip the Court of its authority to determine the proper scope of the arbitration provisions. *See Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181 (S.D. Cal. 2005).

his relationship with "TWC."[10] To hold otherwise, as Defendant suggests, would yield absurd results and should be rejected.[11]

### 2. The express terms of the 2012 Agreement do not cover this dispute

This action similarly is not covered by the 2012 Agreement, which, by its express terms, limits arbitration to "Disputes." Dkt. No. 28-1, ¶15(a). A "dispute" is defined as "any dispute, claim, or controversy between you and TWC regarding any aspect of your relationship with us, including those based on events that occurred prior to the date of this Agreement." *Id.*, ¶16(e). Thus, Defendant dramatically overstates its case in arguing that the 2012 Agreement covers "any disputes" between Plaintiff and Defendant (Dkt. No. 28 at 3, 5), because, as set forth above, Plaintiff's claims are not connected to any purported "relationship" with Defendant (a relationship that does not even exist) and/or its affiliates. Rather, that Plaintiff happens to be a "TWC" subscriber is coincidental as the provision of Internet services by "TWC" to Plaintiff is as related to his claims in this lawsuit as the color of his shirt or the elementary school he attended. Because Plaintiff's claims have no connection with his relationship with "TWC," the arbitration provision in the 2012 Agreement is inapplicable.

## III. CONCLUSION

For the reasons set forth herein, Defendant's Motion should be denied in its entirety.

---

[10] Underscoring this point is that Plaintiff has filed suit against several other companies for similar violations of the TCPA. Those companies, like Defendant here, failed to cease calling Plaintiff after he notified them he was not the person they were seeking. *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012). As such, the conduct complained of by Plaintiff has no connection with the provision of services by "TWC" and is a *non sequitur*.

[11] As noted above, many potential disputes – such as a car accident – have no connection with the provision of any services by Defendant or its affiliates and, as a result, such disputes are not subject to arbitration. "Federal public policy favors arbitration, but not at the price of fairness and common sense." *Stone*, 341 F. Supp. 2d at 192.

DATED:  September 14, 2012	Respectfully submitted,


		/s/ *James L. Davidson*

		**JAMES L. DAVIDSON** (*admitted pro hac vice*)
		**MICHAEL L. GREENWALD** (*admitted pro hac vice*)
		GREENWALD DAVIDSON PLLC
		5550 Glades Road, Suite 500
		Boca Raton, FL 33431
		Telephone:	561.826.5477
		Telecopier:	561.961.5684
		mgreenwald@mgjdlaw.com
		jdavidson@mgjdlaw.com

		Counsel for Plaintiff and the Proposed Class

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been electronically filed on September 14, 2012, via the Court Clerk's CM/ECF system which will provide notice to the following:

>Michael S. French
>Paul G. Sherman
>John P. Mittelbach
>Michael Wolak, III
>WARGO & FRENCH LLP
>999 Peachtree Street. 26th Floor
>Atlanta, Georgia 30309
>Telephone: (404) 853-1500
>Telecopy: (404) 853-1501
>
>Elizabeth S. Chestney
>CORNELL SMITH & MIERL, LLP
>1607 West Avenue
>Austin, Texas 78701
>Telephone: (512) 328-1540
>Telecopy: (512) 328-1541

>*/s/ James L. Davidson*
>**JAMES L. DAVIDSON**